UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY D., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 21-cv-00817-SVK <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 21, 28, 31 |

Plaintiff appeals from the final decision of the Commissioner of Social Security, which denied his application for disability insurance benefits. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 4, 9. For the reasons discussed below, the Court **DENIES** Plaintiff's motion for summary judgment (Dkt. 21, 28) and **GRANTS** Defendant Commissioner's cross-motion for summary judgment (Dkt. 31).

**I.   BACKGROUND**

On or about October 10, 2013, Plaintiff filed an application for Title II disability insurance benefits. *See* Dkt. 14 (Administrative Record ("AR")) 127-133.

On May 13, 2016, an Administrative Law Judge ("ALJ") denied Plaintiff's claim, and the Appeals Council denied review. AR 1-6, 12-29 (the "2016 ALJ Decision"). Plaintiff then filed an action in this District, seeking review of the 2016 ALJ Decision. *Jerry D. v. Berryhill*, U.S. District Court for the Northern District of California, Case No. 18-cv-02506-SVK (the "First Case"). On February 21, 2019, the undersigned granted Plaintiff's motion for summary judgment and remanded Plaintiff's case for a new hearing. AR 888-897. The Court held that the ALJ had erred by giving only "little weight" to the opinion of Plaintiff's treating physician, Dr. Kwok, without specifically identifying the physical examination findings upon which her decision to discount Dr. Kwok's opinion was based. AR 892-896. The Court also held that critical portions

of the ALJ's evaluation of Plaintiff's credibility was tied to the ALJ's erroneous evaluation of the medical evidence. AR 896-897. Accordingly, the Court remanded the case for: (1) proper evaluation of the medical opinions under the applicable legal standard; and (2) reevaluation of Plaintiff's credibility upon reevaluation of the medical evidence. *Id*.

On remand, the ALJ conducted a hearing on September 24, 2019 (AR 1477-1499) and a supplemental hearing on February 20, 2020 (AR 865-887). On April 7, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. AR 839-864 (the "2020 ALJ Decision"). The ALJ concluded that through September 30, 2015 (Plaintiff's date last insured), Plaintiff suffered from the following severe impairment: degenerative disc disease of the lumbar spine with grade I spondylolisthesis. AR 845. The ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. *Id*. The ALJ determined that Plaintiff was unable to perform his past relevant work as a ticket seller, snack bar attendant, sales clerk, and video store sales clerk. AR 856. However, the ALJ found that there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as document preparer, order clerk, and charge account clerk. AR 856-857. Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from January 1, 2012 (the alleged onset date) through September 30, 2015 (the date last insured). AR 857-858.

Following the Appeals Council's denial of Plaintiff's request to review the ALJ Decision (AR 832-838), Plaintiff timely appealed the 2020 ALJ Decision to this Court. Dkt. 1 (Complaint). The Court related this case to the First Case. Dkt. 33.

In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. Dkt. 21 (Plaintiff's motion for summary judgment); Dkt. 28 (Plaintiff's supplement to motion for summary judgment)[1]; Dkt. 31 (Defendant's cross-motion for summary judgment). The cross-motions for summary judgment are now ready for decision without oral argument.

---

[1] Plaintiff's original motion for summary judgment noted that the AR did not include the transcript of the September 24, 2019 ALJ hearing on remand. Dkt. 21-1 at 8. Defendant subsequently supplemented the AR with that transcript, and by agreement of the Parties, Plaintiff filed a supplemental memorandum of law in support of his motion for summary judgment. Dkt. 25-28.

## II.  ISSUES FOR REVIEW[2]

1. Did the ALJ properly evaluate the medical evidence?
2. Did the ALJ properly evaluate Plaintiff's credibility?
3. Did the ALJ properly evaluate lay witness testimony?

## III.  STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

---

[2] In Plaintiff's original motion for summary judgment, he argued that Defendant should be ordered to file the missing September 24, 2019 hearing transcript or the case should be remanded because the administrative record was incomplete. Dkt. 21-1 at 8. He also raise Issue 1 (medical evidence) and Issue 2 (Plaintiff's credibility). *Id.* at 7. As discussed above, Defendant subsequently filed the missing transcript. Dkt. 25. Plaintiff then filed a supplement to his summary judgment motion, adding Issue 3 (lay witness testimony) to the list of issues in this action. Dkt. 28.

3

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

## IV.   DISCUSSION

### A.   Issue One: Evaluation of Medical Evidence

#### 1.   Standard for evaluating medical evidence

As stated above, Plaintiff's application for Social Security disability benefits was filed in October 2013. Under the Social Security Administration regulations that apply in this case,[3] "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians. *Ghanim*, 763 F.3d at 1160; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his own interpretation thereof, and making findings") (internal quotation marks and citation omitted). Where contradicted, the opinion of treating physicians may be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160.

---

[3] New regulations went into effect on March 27, 2017, which include a change in how medical evidence must be evaluated. *See V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also* 20 C.F.R. § 404.1520c(a). This case is subject to the regulations in effect before that date.

4

### 2. Analysis

Plaintiff challenges the ALJ's weighing of medical evidence offered by his treating physician, Joseph Kwok, M.D. Dkt. 21-1 at 8-14. On February 24, 2016, Dr. Kwok completed an RFC questionnaire. AR 817-820. Dr. Kwok stated that Plaintiff had Grade 1 spondylolisthesis and facet mediated low back pain with a "fair" prognosis. AR 817. Among other opinions, Dr. Kwok indicated that Plaintiff's experience of pain was occasionally severe enough to interfere with attention and concentration. AR 818. Dr. Kwok estimated that Plaintiff could walk 4 city blocks without rest or severe pain and could sit or stand 1 hour at a time. AR 818-819. Dr. Kwok also estimated that Plaintiff could sit about 2 hours in an 8-hour work day, could stand about 4 hours in an 8-hour work day, would need to walk for 10 minutes every 90 minutes of the day, and would need to take unscheduled 10-15-minute breaks approximately every 2 hours. AR 819. Dr. Kwok stated that Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking. *Id*. Dr. Kwok also indicated that Plaintiff could frequently lift less than 10 pounds, occasionally lift 10-20 pounds, and never lift 50 pounds. AR 820. Dr. Kwok opined that Plaintiff could occasionally twist, stoop (bend), and crouch/squat, but only rarely climb ladders or stairs. *Id*. Finally, Dr. Kwok stated that Plaintiff's impairments were likely to produce "good days" and "bad days" and that he was likely to be absent from work as a result of his impairments or treatment about 3 days a month. *Id*. Dr. Kwok stated that the earliest date that these symptoms and limitations applied was June 3, 2015. *Id.*

On January 2, 2020, following this Court's remand of the First Case, Dr. Kwok wrote a letter in which he stated that he had been treating Plaintiff since June 2015. AR 1418. Dr. Kwok indicated that Plaintiff presented with axial back pain with intermittent radicular symptoms and that his pain was worse with back flexion and extension and weight bearing. *Id*. Dr. Kwok also stated that he had been treating the pain with facet joint injections along the L5 area and that Plaintiff had tried pool therapy, acupuncture, and PT with limited relief of his symptoms. *Id*. Dr. Kwok indicated that the most recent MRI, taken on June 2019, showed progressive degenerative changes and spondylolisthesis at L4-5 and neuroforaminal narrowing of the lower spine, and "[o]therwise, no significant change." *Id.*

On approximately February 26, 2020, Dr. Kwok sent an email to Plaintiff and sent a letter to his attorney indicating that in his opinion, Plaintiff was unable to sit continuously for 6 hours and could only sit for 1 to 2 hours continuously. AR 1470. Dr. Kwok opined that facet pain is worse with prolonged sitting and that this was confirmed by literature he reviewed. *Id.* Dr. Kwok attached a PubMed medical journal article on facet joint disease to his letter. AR 1471-75.[4]

In the 2020 ALJ Decision, the ALJ found that Dr. Kwok's opinions were entitled to "little weight." AR 851. The ALJ gave several reasons for discounting Dr. Kwok's opinions, which the Court will now discuss.

### a. Inconsistency with Plaintiff's self-reported symptoms and activities

The ALJ found Dr. Kwok's opinions about Plaintiff's pain-related limitations to be inconsistent with Plaintiff's self-reported symptoms and his own reports of higher functioning. AR 851-852. The ALJ discussed specific examples (with citations to specific pages in the record), such as Plaintiff's characterizations of his pain as "intermittent/mild," "slight," and "occasional" and his reports that he could walk several miles, was taking a dance class, repeatedly traveled to Greece, and engaged in other physical activities. AR 849-852; *see also* Ex. 8F/11, 19, 20 (AR 637, 645, 646); Ex. 6E/4-5 (AR190-191); Ex. 9F/66 and 108 (AR 712, 754), Ex. 13F/8 (AR 828); AR 871-72.

Plaintiff argues that some of these statements cited by the ALJ are incomplete or taken out of context. *See* Dkt. 21-1 at 15-16 (arguing that statements in the record that Plaintiff's pain was mild, intermittent, occasional, and slight may have been statements of his mother or statements following epidural shots); *id.* at 16 (stating that Plaintiff claimed to need a 10-minute break during dance class); Dkt. 28 at 1-2 (providing additional information about Plaintiff's annual trips to Greece). However, Plaintiff has not demonstrated that the ALJ erred in relying on such statements to evaluate Dr. Kwok's opinions. The ALJ noted many other instances in the record where

---

[4] To be eligible for benefits, Plaintiff must show that he was disabled before his last insured date of September 30, 2015. *See Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017). The Court notes that Dr. Kwok's January and February 2020 opinions were rendered more than four years after that date.

Plaintiff's pain was described in less serious terms than his testimony at the hearing. *See, e.g.,* AR 849 (noting that with chiropractic treatment, Plaintiff was "much improved," "improving slowly," and better from the last treatment (citing Ex. 8F 5, 11)); *id.* (discussing records revealing reports of decreased levels of pain, down to five, four, and three in September 2015 (citing Ex. 2F/35, 8F/17, and 9F/108)). Moreover, in evaluating the medical record, the ALJ discussed other facts cited by Plaintiff in his summary judgment motion. For example, the ALJ noted Plaintiff's statements that during his trips to Greece, he does not walk far, tries to use a vehicle, and lays down, and that he tries to stand on the flight. AR 846. However, after further discussion of the medical record, the ALJ concluded that "[e]ven after considering the claimant's allegations, the undersigned notes that logically, if the pain was so severe and debilitating as to result in the limitations assessed by Dr. Kwok, the claimant would not be able to fly to Greece as frequently as he reportedly does" and "[a]ccording to Dr. Kwok's assessed limitations, the claimant would be unable to manage a 14-hour flight." AR 851-852.

An ALJ may reject a treating physician's opinion if it conflicts with the claimant's own statements. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Similarly, "[a] conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The ALJ's 2020 Decision, when read in its entirety, reflects her consideration of and reasonable conclusion, supported by the record, that Plaintiff's own self-reported symptoms and activities are inconsistent with the limitations found by Dr. Kwok.

          **b.**     **Inconsistency with other medical records**

The ALJ also found Dr. Kwok's opinions to be inconsistent with opinions of other medical providers that Plaintiff could perform light exertional work and could sit, stand, walk, and engage in other activities to a greater extent than reflected in Dr. Kwok's opinion. AR 851-854. Plaintiff criticizes this portion of the 2020 ALJ Decision as being inconsistent with this Court's instructions on remand because "the ALJ still cited to hundreds of pages of medical records" Dkt. 21-1 at 8. However, the Court finds that the 2020 ALJ Decision does not suffer from the same deficiency as the 2016 ALJ Decision. As Plaintiff notes, "[t]his time around the ALJ did not cite all those

exhibits [Exs. 2F, 3F, 9F, 10F, and 11F] for her opinion that Dr. Kwok's opinion was inconsistent." Dkt. 21-1 at 11. Unlike the 2016 ALJ Decision, in multiple places the 2020 ALJ Decision cites specific page numbers in the medical record to support the ALJ's conclusion that "Dr. Kwok's opinions are inconsistent with the other medical opinions in the record." *See* AR 852-854 and evidence cited therein. The ALJ discussed the opinions of medical consultants Calvin Pon, M.D.; L. Sauer, M.D.; and A. Blando, M.D., all of whom opined that Plaintiff could perform light work and that he could sit about 6 hours in an 8-hour workday. AR 854-855; *see also* Exs. 3F (AR 319-322), 2A (AR 55-64) and 3A (AR 65-78). The ALJ gave these opinions "great weight" because "they are generally consistent with the other medical opinions in the record and the overall record. AR 854. The ALJ further explained that "these opinions are supported by the generally unremarkable findings noted during examination" and are "consistent with the claimant's reports of improvement and decreased pain and the evidence of higher functioning, as discussed above." *Id.* Although in this paragraph, the ALJ cites "Ex. 2F; 3F; 9F" without specific page cites, this paragraph is preceded by several pages of discussion of the referenced topics with many such specific citations. *See* AR 846-854.

Although the opinion of a nonexamining physician cannot, by itself, provide substantial evidence justifying rejection of the opinion of a treating physician, such testimony can be considered in combination with other evidence such as conflicting test results, contrary reports from other examining physicians, and the claimant's testimony. *Lester v. Chater,* 81 F.3d 821, 731 (9th Cir. 1995); *see also Morgan*, 169 F.3d at 601 ("we have consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor"). Here, the ALJ's evaluation of the opinions of Drs. Pon, Sauer, and Blondo, in combination with the other medical record evidence cited by the ALJ (as well as other factors such as Plaintiff's activities and self-reported severity, as discussed above), provides substantial evidence justifying rejection of Dr. Kwok's opinions regarding the severity of Plaintiff's limitations.

          **c.**     **Internal inconsistency**

The ALJ also found Dr. Kwok's opinions to be internally inconsistent. AR 851. The ALJ

stated that whereas in February 2016, Dr. Kwok limited Plaintiff to sitting 2 hours total in an 8-hour day, Dr. Kwok opined in March 2020 that Plaintiff could sit for only 1 to 2 hours at a time. *Id.* According to the ALJ, "[t]here is a significant difference between only being able to sit for two hours total in an eight-hour day versus one to two hours continuously," and "if the claimant is able to sit for two hours continuously, this would form natural boundaries at the end of each two hour period. AR 851. However, the Court does not find an inconsistency rising to the level suggested by the ALJ. Dr. Kwok's February 2016 opinion was that Plaintiff could sit 1 hour at a time for a total of about 2 hours in an 8-hour day. AR 818-819 (questions 13b and 13c). Dr. Kwok's February 2020 opinion was that Plaintiff "is unable to sit continuously for 6 hours during the work day" and that Dr. Kwok thought "he can only sit 1 to 2 hours continuously at one time." AR 1470. The ALJ's conclusion that these two opinions were inconsistent appears to ignore the portion of Dr. Kwok's February 2016 assessment that Plaintiff could sit for one hour at a time. *See* AR 818 (question 13b). However, because inconsistencies between Dr. Kwok's opinions and Plaintiffs' activities, self-reported symptoms, and other portions of the medical record support the ALJ's assignment of little weight to Dr. Kwok's opinions, as discussed above, the Court finds any error with respect to the ALJ's conclusion that Dr. Kwok's opinions were internally inconsistent to be harmless. *See Brown-Hunter*, 806 F.3d at 492.

### d.     Dr. Schmitter's testimony

Another reason cited by the ALJ in giving Dr. Kwok's opinions little weight is the testimony of Eric D. Schmitter, M.D., a medical expert who testified at the February 2020 hearing on remand. AR 852-854. In its opinion remanding the First Case, this Court noted deficiencies in the ALJ's evaluation of Dr. Kwok's opinions. *See* AR 895-896. On remand, the ALJ called Dr. Schmitter, a consultant who had not testified at the original hearing, and informed him at the outset of his testimony that "this case is before me on a District Court remand" in which "the District Court wrote that the opinion of Dr. Kwok was rejected without providing specific and legitimate reasons." AR 873. The ALJ stated that "I'm focused on Dr. Kwok's opinion as well, of course, as all the other evidence." *Id.* Dr. Schmitter then testified that he found Dr. Kwok's 2016 RFC analysis to be "exceedingly low and not well explained, particularly for sitting."

9

AR 874. As to whether Plaintiff would have sitting limitations, Dr. Schmitter testified:

> I don't see any reason why sitting is limited [INAUDIBLE] out of eight-hour day. I, I don't see any limits to sitting all, because when they're sitting, they're not really putting any [INAUDIBLE] on their back. That makes no sense at all, so I would disagree that (sic).

AR 875; *see also* AR 883-884. Dr. Schmitter went on to explain the typical symptoms of and effective treatments for spondylolisthesis, particularly spinal fusion and epidural shots. AR 874-878, 879.

After summarizing Dr. Schmitter's testimony on these points, the ALJ stated that she gave his opinion "great weight because it is consistent with the overall record, supported by the objective medical testing results and findings, and because it was supported by an extensive explanation." AR 854. The ALJ noted that "this opinion is related to Dr. Schmitter's specialty as an orthopedic surgeon." *Id.* She also noted that Dr. Schmitter was able to explain how the imaging results were consistent with Plaintiff's spondylolisthesis diagnosis, and he also provided a "thorough explanation as to why Dr. Kwok's opinions were overly restrictive and not supported by medical evidence of record." *Id.* The ALJ also found Dr. Schmitter's opinion more consistent with Plaintiff's self-reported improvement and higher functioning. *Id.*

Plaintiff criticizes the ALJ's decision to give Dr. Schmitter's opinion more weight than the opinion of the treating physician, Dr. Kwok, arguing that Dr. Schmitter was not qualified to testify as a medical expert and that parts of his opinion were not substantiated or were overstated. Dkt. 21-1 at 9-10.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995); *see also Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008). However, State agency medical consultants are considered "highly qualified physicians ... who are also experts in Social Security disability evaluations." 20 C.F.R. § 404.1527(f)(2)(I); *see also Cabibi v. Astrue,* No. 5:09-CV-03768-LHK, 2011 WL 6303401, at *5 (N.D. Cal. Dec. 16, 2011). Moreover, their opinions may serve as substantial evidence for determining RFC where they are consistent with independent clinical findings or

other evidence in the record." *Edwards v. Astrue,* No. 5:11-CV-00320-LHK 2012 WL 1029390, at *7 (N.D. Cal. Mar. 26, 2012).

Although in ordinary circumstances, the ALJ might have been justified in relying in part on Dr. Schmitter's testimony as a reason to discount Dr. Kwok's opinions, the Court does not find the ALJ's reliance on Dr. Schmitter's testimony to be appropriate in this case. As explained above, at the outset of Dr. Schmitter's testimony, the ALJ called his attention to the reasons for this Court remanding this case and essentially invited him to critique Dr. Kwok's opinions, which he then did. The ALJ then cited Dr. Schmitter's testimony as a basis for discounting Dr. Kwok's opinions. AR 852-854. In the context of this case, the ALJ's conduct could be seen as an improper effort to bolster her previous conclusions about Dr. Kwok's opinions by obtaining new evidence on remand in the form of testimony from Dr. Schmitter. As such, the Court concludes that Dr. Schmitter's testimony does not provided a basis for discounting Dr. Kwok's opinions. Ameliorating this conclusion somewhat is the fact that the ALJ incorporated a 6-hour sitting limitation (AR 845), whereas Dr. Schmitter opined that Plaintiff would have no limitation on sitting (AR 875). In addition, as discussed above, any error with regard to the ALJ's reliance on Dr. Schmitter is harmless given that other factors that the ALJ appropriately considered support her rejection on of Dr. Kwok's opinions. *See Brown-Hunter*, 806 F.3d at 492.

### e. Conclusion on evaluation of medical evidence

As discussed, several reasons the ALJ offered for discounting Dr. Kwok's opinions would not, by themselves, constitute specific and legitimate reasons that are supported by substantial evidence for rejecting Dr. Kwok's opinions. However, considering the record as a whole, the first two reasons given by the ALJ—the inconsistency between Dr. Kwok's opinions and Plaintiff's own self-reported symptoms/activities and the inconsistency between Dr. Kwok's opinions and other medical record evidence—are sufficiently specific, clear, and convincing to support the ALJ's decision to discount Dr. Kwok's opinion.

Plaintiff's remaining arguments simply identify reasons the ALJ could have come to different conclusion about Plaintiff's condition. *See* Dkt. 28-1 at 17-18. However, the ALJ is responsible for determining credibility and resolving conflicts in the medical evidence.

1  *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989).  The Court must defer to the decision of
2  the ALJ where evidence exists to support more than one rational interpretation.  *Drouin v.*
3  *Sullivan,* 966 F.2d 1255, 1258 (9th Cir. 1992); *Bennett v. Colvin,* 202 F. Supp. 3d 1119, 1127
4  (N.D. Cal. 2016).  For the reasons discussed above, the Court finds the conclusions drawn by the
5  ALJ are supported by substantial evidence.

6  Accordingly, for the reasons discussed above, on the issue of the ALJ's evaluation of the
7  medical evidence, the Court **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-
8  motion.

### B.     Issue Two:  Plaintiff's Credibility

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering *specific, clear and convincing reasons* for doing so.'"  *Brown-Hunter*, 806 F.3d at 492-93 (emphasis added) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).

Plaintiff testified that he has constant daily pain in his lower back, at a level of 8 on a scale from 1 to 10, that requires him to lay down for a couple hours each day and interferes with his ability to stand for more than 15 minutes or walk for more than 20 minutes.  AR 1482-1488.  He also testified that he could not perform a full-time job, even one where he could sit all day or switch at will between sitting and standing, because he would have to lay down.  AR 1484.  He testified that various treatments, such as over-the-counter pain medications, ice, physical therapy, and epidural injections helped, if at all, only temporarily.  AR 869; AR 1485-1487.

The ALJ found that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the

12

alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 846. This statement was followed by an extensive discussion, in most instances with specific citations to the record, of medical evidence, test results, and treatment efforts. AR 846-849. Following this discussion, the ALJ stated that "[d]espite the claimant's allegations, the overall record reveals that the claimant's condition is not as debilitating as alleged." AR 849. The ALJ articulated at least seven reasons for this conclusion, again with citations to specific portions of the record, including that: (1) during the time period at issue, most of Plaintiff's treatment records evidenced vision care, and the treatment he received for his lower back was generally conservative; (2) Plaintiff reported (and records reflected) improvement with treatment such as Tylenol, PT, massage, and chiropractic treatment; (3) Plaintiff characterized his pain as "intermittent/mild," "slight," and "occasional"; (4) Plaintiff could walk several miles and was taking a dance class; (5) Plaintiff reported no problems with personal care and engaged in a number of daily activities, as well as repeated visits to Greece; (6) the medical record revealed generally unremarkable findings; and (7) there was evidence of noncompliance. AR 849-850.

The ALJ's reasons for discounting Plaintiff's testimony are all variations on the same theme: the record evidence shows that Plaintiff's back problems are not as severe as stated in his testimony, and he is more functional than alleged. *See* AR 849-850. The ALJ gave detailed descriptions of the record to support her reasons for discounting Plaintiff's testimony. *See, e.g., id.* It is true, as Plaintiff argues, that in places the ALJ referred to large portions of the record without pinpointing specific pages. *See, e.g.,* AR 849 ("[T]he treatment the claimant did receive for his lower back was generally conservative, as discussed above" (citing "Ex. 2F; 5F; 8F; 9F; 13F"). However, most of these general citations were preceded and/or followed by a discussion of, and citations to, specific portions of the record. *See, e.g.,* AR 847 (noting discussions with Dr. Kwok of treatment modalities of oral medication, physical therapy, acupuncture, surgery, and home exercises (citing Ex. 9F/98-99); AR 848 (noting that Plaintiff attended physical therapy sessions in April and May 2022 (citing Ex. 2F/43-45, 46-47, 51-52)); *id.* (noting chiropractic

treatment (citing Ex. 8F/2-20; 13F/6-8)); AR 849 (noting that Plaintiff reported pain relief from sleeping, laying down, massage, a waist belt, heating pad, Tylenol, physical therapy, chiropractic treatment (citing Ex. 5E/2; 2F/37, 44, 51; 5F/44; 8F/ 5, 11, 19, 20; 9F/66, 72).

Plaintiff also argues that some of the specific medical evidence cited by the ALJ is taken out of context. *See* Dkt. 21-1 at 15-16 (arguing that statements in the record that Plaintiff's pain was mild, intermittent, occasional, and slight may have been statements of his mother or statements following epidural shots). This argument is discussed in more detail in Section IV.A.2.a., *supra*. Plaintiff has not demonstrated that the ALJ erred in relying on such statements in the medical record to evaluate Plaintiff's credibility, particularly where the ALJ noted many other instances in the record where Plaintiff's pain was described in less serious terms than his testimony at the hearing. *See, e.g.,* AR 849 (noting that with chiropractic treatment, Plaintiff was "much improved," "improving slowly," and better from the last treatment (citing Ex. 8F 5, 11)); *id.* (discussing records revealing reports of decreased levels of pain, down to five, four, and three in September 2015 (citing Ex. 2F/35, 8F/17, and 9F/108)).

Plaintiff argues that he "has done everything that has been recommended to him," which involved a wide range of treatment. Dkt. 21-1 at 15-16. Plaintiff also criticizes the ALJ for noting that he takes a dance class and walks several miles, for "includ[ing] every single daily activity [Plaintiff] did," and for emphasizing his trips to Greece. *Id.* at 18. Plaintiff argues that "there is nothing in the activities that [he] does or to which the ALJ cited that indicates he could consistently report to the workplace and perform productively in a work setting on a continuous basis." Dkt. 21-1 at 18.

Although Plaintiff is correct that "one does not need to be utterly incapacitated in order to be disabled" (Dkt. 21-1 at 17 (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)), the Court concludes that when the 2020 ALJ Decision is read in its entirety, it adequately identifies portions of the record that are at least in tension with, if not directly contradictory to, Plaintiff's testimony, and provides specific, clear, and convincing reasons for discounting Plaintiff's testimony. *See Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible … and explain what

evidence undermines the testimony"). Even if any particular reason offered by the ALJ for discounting Plaintiff's testimony is not by itself an adequate basis to find Plaintiff not credible, that error would be harmless, given the numerous other specific, clear, and convincing reasons cited by the ALJ. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.") (citations omitted), *superseded by regulation on other grounds*.

Accordingly, for the reasons discussed above, on the issue of Plaintiff's credibility, the Court **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-motion.

### C. Issue Three: Lay Witness Testimony

Plaintiff argues that the ALJ failed to consider the testimony of his brother, whom this order will refer to as "N.D.," at the hearing on remand. Dkt. 28 at 2-3. N.D. testified that Plaintiff's back condition has worsened, that Plaintiff gave up a job at Big 5 because of the pain, and that N.D. had observed his brother limit his activities because of back pain. *See* AR 1491-1495.

The ALJ summarized and addressed N.D.'s testimony in the 2020 ALJ Decision as follows:

> This opinion is given little weight as [sic] because it is a lay opinion based upon casual observation, rather than objective medical [sic] and testing. The observations of such a layperson certainly do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe. Ultimately this opinion is unpersuasive for the same reasons that the claimant's own allegations do not fully persuade the undersigned as they lack substantial support from objective findings in the record.

AR 855.

The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014). (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). "[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the

competence of lay witnesses' to make." *Tobeler*, 749 F.3d at 833 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). But "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment." *Id.* (citations and internal quotation marks omitted).

Where a lay witness' testimony is similar to the claimant's own testimony regarding her subjective complaints, the ALJ's reasons given to reject the claimant's testimony are deemed sufficiently germane reasons to reject the lay witness testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *see also Molina v. Astrue*, 674 F.3d 1104, 1111, 1122 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a) (finding an ALJ's failure to address a nonmedical source at all harmless where ALJ addressed claimant's similar testimony).

As discussed above, the ALJ's reasons for finding Plaintiff's symptom testimony not entirely consistent with the record are supported by the record, and therefore the ALJ was justified in giving his brother's similar testimony little weight for the same reasons.

Accordingly, for the reasons discussed above, on the issue of the ALJ's evaluation of the lay witness testimony, the Court **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-motion.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant Commissioner's cross-motion for summary judgment.

**SO ORDERED.**

Dated: September 26, 2022

SUSAN VAN KEULEN
United States Magistrate Judge